[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-10779

Non-Argument Calendar

_____

ANDRE DELICEANO MILLER,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A 076-475-973

_____

Before JORDAN, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Andre Miller petitions for review of an order from the Board of Immigration Appeals affirming the denial of his motion to rescind his in absentia order of removal and reopen his immigration proceedings. He argues that the Board abused its discretion when it determined that he received proper notice. His first notice-defect argument is that his notice did not include all the consequences of failing to appear under 8 U.S.C. § 1229a(b)(5). His second notice-defect argument is that his initial notice to appear did not specify the date and time of his hearing. After careful consideration, we deny his petition.

## I.

Miller is a native and citizen of the Bahamas who entered the United States on a six-month tourist visa in September 2004. Miller overstayed that visa and remained in the United States for another eight years. At that point, the Department of Homeland Security served him with a notice to appear charging that he was removable pursuant to 8 U.S.C. § 1227(a)(1)(B). The notice ordered Miller to appear before an Immigration Judge at a date and time to be set in the future and warned him of the consequences for failing to appear at his hearing. Specifically, it warned Miller that if he "fail[ed] to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court," then "a removal order may be made by the

immigration judge in [his] absence," and he could "be arrested and detained by the [Department of Homeland Security]."

Miller received a second notice setting his hearing for May 6, 2013 in Atlanta, Georgia. He was again warned that failure to appear at the hearing could result in an order of removal. On Miller's motion, the hearing was rescheduled and first moved to New York, and then to Florida. Eventually—in July 2014—Miller attended a master hearing and conceded to removability. The Immigration Judge personally served Miller with notice that his next hearing would be January 20, 2015, and warned him yet again that failure to appear could result in an in absentia removal.

In October 2014, Miller's counsel moved to withdraw from the proceedings "because of [Miller's] persistent failure to fulfill his obligations." In doing so, his counsel stated that he informed Miller of his January 2015 hearing, delivered a copy of the notice of hearing to him by first class mail, and "exhorted him to read this Court's Notice of Hearing reminding him that if he does not appear in Court for her [sic] next hearing he may be ordered removed from the United States." The Immigration Judge granted the motion to withdraw.

Despite the repeated warnings, Miller did not attend his January 2015 hearing. Because he had already conceded removability and was personally served with notice, Miller was ordered removed to the Bahamas in absentia. Four more years passed before Miller was detained by the Department of Homeland Security for execution of the removal order.

Upon his detention, Miller filed an emergency motion to rescind the in absentia removal order and reopen his removal proceedings under 8 U.S.C. § 1229a(b)(5)(C)(ii). He argued that the notices that he received were deficient under 8 U.S.C. § 1229(a)(1)(G)(ii) and 1229(a)(2)(A)(ii). Under those provisions, the notices he received were required to specify the "consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear." Miller argued that the notices specified some, but not all, of those consequences. Specifically, Miller contended that the notices were required to notify him of the provisions of § 1229a(b)(5) concerning rescission and judicial review.

After an Immigration Judge denied the motion, the Board of Immigration Appeals dismissed his appeal. In a supplemental brief to the Board following the Supreme Court's decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), Miller added a new argument: that his initial notice to appear was deficient for the failure to specify the time and place of his proceedings. The Board rejected both arguments. It rejected Miller's first notice-defect argument because the Board has long held that notice of the possibility of removal in absentia was sufficient. And it rejected his time-and-place argument because that defect was cured by the subsequent notice Miller received, which did specify the time and place of his hearing.

Miller now petitions for review of the Board's decision to this Court, and we deny the petition.

## II.

The Board's decision does not adopt the reasoning of the immigration judge, so we review only the Board's reasoning. *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1315 (11th Cir. 2022). "We review the Board's denial of a motion to reopen for an abuse of discretion, but review any underlying legal conclusions de novo." *Id.* An abuse of discretion occurs when the Board misapplies the law. *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013).

## III.

## A.

We start with Miller's first notice-defect claim—that he was not informed of all the consequences of failure to appear. "The fundamental principle governing any exercise in statutory construction is that we begin where all such inquiries must begin: with the language of the statute itself." *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021) (quotations omitted) (alteration adopted). So we begin with an overview of the relevant statutory provisions.

Under § 1229—governing initiation of removal proceedings—a notice to appear must specify the "consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear." 8 U.S.C. § 1229(a)(1)(G)(ii); *id.* § 1229(a)(2)(A)(ii). Section 1229a(b)(5), in turn, is entitled "Consequences of failure to appear." *Id.* § 1229a(b)(5). It has five

subsections—A through E.  Subsection A, entitled "In General," provides that any noncitizen receiving notice in accordance with the statute who does not appear at a hearing will be ordered removed in absentia if the government establishes by clear, unequivocal, and convincing evidence that the noncitizen is removable.  *Id.* § 1229a(b)(5)(A).  Miller concedes that his notices warned him of this possibility.

The remaining subsections concern subsection A's applicability and the options available for seeking to undo or challenge an in absentia removal order.  Subsection B provides that written notice of the hearing is not required if the noncitizen fails to provide an address.  *Id.* § 1229a(b)(5)(B).  Subsection C says that an in absentia removal order may be rescinded only if the noncitizen can demonstrate that the failure to appear was because of exceptional circumstances or that notice was not received in accordance with the statute.  *Id.* § 1229a(b)(5)(C).  Subsection D allows for judicial review of the grounds upon which an in absentia removal order is entered: the validity of the notice received, the reason the noncitizen did not attend the proceeding, and whether the noncitizen is removable.   *Id.* § 1229a(b)(5)(D).   Finally, subsection E clarifies that the in absentia removal provisions apply to all noncitizens, including those who remain in contiguous foreign territory under 8 U.S.C. § 1225(b)(2)(C).

The term "consequences" is undefined in the statute, so "we look to the plain and ordinary meaning of the statutory language as it was understood at the time the law was enacted." *Chinchilla*,

987 F.3d at 1308.  A "consequence" is "a natural or necessary result."  Webster's Third New International Dictionary 482–83 (1993); *see also Consequence*, Black's Law Dictionary 306 (6th ed. 1990) (defining "consequence" as the "result following in natural sequence from an event which is adapted to produce, or to aid in producing, such result").  Miller says that the rescission and judicial review provisions found in subsections C and D—which were not specified in the notices that he had received—are consequences of his failure to appear.  Therefore, we ask whether the provisions of § 1229a(b)(5) relating the rescission of an in absentia removal order and judicial review of such order are the natural and necessary result from the failure to appear.

They are not.  If a noncitizen fails to appear at a hearing, the natural and necessary result is that an in absentia removal order will be entered if the government meets its burden that written notice was provided and that the noncitizen is removable.  8 U.S.C. § 1229a(b)(5)(A).  The notices Miller received adequately and repeatedly warned him of this possibility.  The rescission and judicial review provisions, on the other hand, describe how and under which circumstances the consequences of the failure to appear can be undone—which does not naturally and necessarily result from the failure to appear.

Miller does not cite to a single published decision—in any circuit—that has adopted his reading of the statute.[1]   Miller primarily attempts to recharacterize the recission and review provisions as stripping noncitizens of their appellate rights.   For example, Miller argues that a noncitizen ordered removed in absentia who later becomes eligible for adjustment of status is barred from moving to reopen the removal proceeding because under § 1229a(b)(5)(C) an in absentia removal order may be rescinded "only" upon a motion alleging that the failure to appear was due to exceptional circumstances or lack of adequate notice. Miller's characterization of these provisions misses the mark.   The rescission and judicial review provisions stem from *being ordered removed in absentia*, not from the failure to appear itself.

Miller next argues that the phrase "consequences under section 1229a(b)(5)" must include more than just the consequences under § 1229a(b)(5)(A).   Otherwise, he argues, Congress would have more narrowly said "consequences under section 1229a(b)(5)(A)."   But there is no reason to conclude that all the consequences under § 1229a(b)(5) could not be found in a single subsection.   Indeed, there is no dispute that at least some subsections of § 1229a(b)(5)—subsections B and E—are not consequences that a noncitizen must be informed of.  *See* 8 U.S.C.

---

[1] In an unpublished decision, we have already once rejected the same argument Miller advances today. *Lopez-Garcia v. U.S. Att'y Gen.*, No. 20-14380, 2021 WL 5414911, at *3 (11th Cir. Nov. 19, 2021).

§ 1229a(b)(5)(B), (E). We will not strain the statute to conclude that subsections that do not contain consequences of the failure to appear in fact do based only upon Congress's choice to broadly reference to § 1229a(b)(5).

Miller moves next to the section's headers. Section 1229a(b)(5) is titled: "Consequences of failure to appear." He argues that the use of the plural form *consequences* suggests a reading of the statute that requires warning of more than only the possibility of in absentia removal. And subsection E is titled "Effect on judicial review." 8 U.S.C. § 1229a(b)(5)(E). Miller argues that because consequence is sometimes used synonymously with effect, the judicial review provision must be a consequence of the failure to appear.

While it is true that the "title of a statute or section can aid in resolving an ambiguity in the legislation's text," the title "cannot undo or limit that which the text makes plain." *Auriga Polymers Inc. v. PMCM2, LLC*, 40 F.4th 1273, 1286 (11th Cir. 2022) (quotations omitted); *see also United States v. Smith*, 967 F.3d 1196, 1211–12 (11th Cir. 2020). Because the plain meaning of consequences is clear—and does not include the rescission and judicial review provisions—we do not resort to the section's title to manufacture ambiguity.

We therefore conclude that the plain language of the statute requires the noncitizen to be warned of only the possibility of in absentia removal. The notices Miller received repeatedly notified

him of that consequence if he failed to appear at his hearing.  We accordingly deny the petition for review on this ground.

## B.

We also deny Miller's second deficient-notice claim—that the initial notice he received did not state the date and time of his hearing.  Miller concedes that this argument is foreclosed by our precedent in *Dacostagomez-Aguilar v. U.S. Attorney General*, 40 F.4th 1312, 1314 (11th Cir. 2022).  And we adhere to our past decisions unless a prior panel's decision has been overruled or abrogated by the Supreme Court or by us sitting *en banc*.  *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

★    ★    ★

The petition for review is **DENIED.**